UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
RAFAEL HERNANDEZ, JR.,

                Plaintiff,

         - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5760 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Rafael Hernandez, Jr. brings this action under 42 U.S.C. § 1383(c), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 14, 19, 21.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I. Factual and Procedural Background

      Plaintiff worked as a truck driver until suffering an injury in October 2015 while he was pulling pallets at work. (Tr. 296, 435.[1]) Despite feeling lower back pain after the accident, Plaintiff continued to work until the pain caused him to collapse on the job in November 2015. (Tr. 296.) Plaintiff began treatment with rehabilitation specialists Drs. Joseph Herrera and Eliana Cardozo in late 2015 and continued through 2016. (Tr. 260–87.) In January 2016, an MRI revealed disc protrusions and/or bulges from L2-3 through L5-S1, and probable muscle spasm. (Tr. 331–32). From 2017 until late 2018, Plaintiff was self-employed as a contractor. (Tr. 12–

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

1

13.)  During a hearing before the SSA Administrative Law Judge ("ALJ"), Plaintiff described how he would find contracting jobs and lease them out to other people.  (Tr. 55–56.)

By late 2017 and early 2018, Plaintiff began seeing Dr. Richard Chang, a physiatrist, and Dr. Leonid Bukhman, a primary care physician, for his lower back pain.  (Tr. 253, 407–10.)  Plaintiff underwent some physical therapy during this time; however, it did not provide him relief.  (Tr. 253, 435.)  Dr. Chang treated Plaintiff with a set of epidurals in the spine in September/October 2018, which Plaintiff indicated only provided several days of relief, and prescribed Cyclobenzaprine.  (Tr. 253.)  In addition to medication, Plaintiff's insurance provided a home attendant who assisted with household activities seven days a week.  (Tr. 254.)

On July 3, 2018, Plaintiff applied for SSI, claiming that he had been disabled since November 18, 2015, due to chronic back/knee/feet/neck pain, headaches, eye problems, and a herniated disc.  (Tr. 10, 200.)  The onset date was later amended to November 1, 2018.  (Tr. 13.)  In October 2018, Plaintiff met with consultative examiner Dr. Robert Greene, an internal medicine specialist.[2]  (Tr. 253–58.)  Dr. Greene concluded that Plaintiff had marked limitations in heavy lifting, heavy carrying, squatting, kneeling, crouching, frequent stair climbing, prolonged walking/standing/sitting, and frequent bending.  (Tr. 256.)  In November 2018, Dr. D. Chen, an internal medicine specialist and non-examining expert, determined that Plaintiff was capable of "light work."  (Tr. 72–74.)  While Dr. Chen had access to Dr. Greene's examination report, it is unclear from the "Evidence of Record" whether Dr. Chen had access to any treatment notes from after 2016.[3]  (*See* Tr. 70–72.)

---

[2] In his opinion, Dr. Greene misspells Dr. Chang as "Dr. Cheng."  (Tr. 253.)

[3] Dr. Chen does not cite to any particular set of treatment notes, and all of the information cited in Dr. Chen's report was contained in Dr. Greene's report.  (Tr. 72–74.)  Additionally, it appears that Dr. Chen did not have access to any treatment records from beyond 2016, two years prior to the amended onset date. (Tr. 70–71, 247–52 (treatment notes from 2012–2013), 259–355

Plaintiff's claim for SSI was initially denied on November 30, 2018. (Tr. 10.) Plaintiff then requested a hearing before an ALJ. On January 7, 2020, Plaintiff appeared with his attorney Jacqueline Sandy for a hearing before ALJ Jason A. Miller. (Tr. 46–68.) During the hearing, vocational expert Heili Randall testified. (Tr. 66–67.) At the hearing, Plaintiff stated that he currently takes four to five different medications for pain management, underwent another round of epidurals three months prior to the hearing, uses a cane to ambulate, and has discussed surgery with Dr. Chang. (Tr. 56–58, 60.) The record suggests that the four medications are Flexeril, Gabapentin, Meloxicam, and Trazodone, however, it is unclear what surgery was recommended. (Tr. 400.) Additionally, Plaintiff stated several times that the pain has caused "stress," which makes him feel that he is "not capable of doing anything." (Tr. 14, 55–56, 63.)

By decision dated January 30, 2020, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from July 3, 2018, the date the SSI application was filed, through the date of the ALJ's decision. (Tr. 7–25.) Plaintiff's request for a review of the ALJ's decision was denied by the Appeals Council on September 24, 2020. (Tr. 1–3.) Thereafter, Plaintiff timely commenced this action.[4]

---

(treatment notes from 2015–2016).) The only other medical evidence from Mount Sinai is dated after Dr. Chen provided a medical opinion in November 2018. (Tr. 427–454 (treatment notes from 2019).) Additionally, the "Evidence of Record" (Tr. 70–71) does not affirmatively show any records were received from La Salud Medical Center, where Plaintiff was treated by Dr. Bukhman, and it indicates that while records were requested from Dr. Chang, Plaintiff's treating physician, none were received.

[4] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of

**II.     The ALJ's Decision**

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[5] First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1. If

---

notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). The final decision was issued September 24, 2020 (Tr. at 1), and the Complaint was filed on November 27, 2020 (Complaint, Dkt. 1), 60 days after the presumed receipt of the decision, rendering this appeal timely.

[5] Some cases cited below involve disability insurance benefits (DIB) regulations, while this case involves SSI, but the DIB and SSI regulations are "virtually identical." *Canter v. Saul*, No. 19-CV-157 (KAD), 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020). The DIB regulations are found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

4

the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing on to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2018, the amended onset date. (Tr. 13.) At step two, the ALJ determined that Plaintiff had the "following severe impairments: Degenerative disc disease of the lumbar spine with radiculopathy, and clinical obesity." (*Id.*) The ALJ determined that Plaintiff's other alleged impairments, including headaches, eye problems, and chronic pain in his neck, knees, and feet, were not sufficiently severe as to satisfy the step two criteria. (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (Tr. 14.) The ALJ then determined Plaintiff's RFC as follows: "the claimant has the residual functional capacity to perform the full range of light work as defined in

5

20 C.F.R. § 416.967(b).'"[6] (Tr. 14–15.) At step four, the ALJ concluded that due to his severe impairments, Plaintiff could not perform his past work as a truck driver. (Tr. 20.) Finally, at step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) The ALJ thus concluded that the Plaintiff was not disabled. (Tr. 20–21)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*

---

[6] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards. (Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 14-1, at 9.) As discussed below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record and provided an RFC that was not supported by substantial evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) (remanding after the court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence).

**I.  Failure to Develop the Record**

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015). It is well-established in this Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)). This obligation exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-

7

3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  Furthermore, even though Plaintiff did not raise the issue, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record."  *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

Here, there are at least two errors with respect to the ALJ's development of Plaintiff's medical history that justify remand and should be corrected by the ALJ on remand.  First, the ALJ failed to obtain any medical opinions from Plaintiff's treating sources.  Second, the ALJ failed to develop the record to reconcile marked inconsistencies between Dr. Greene's medical opinion and his examination notes.

### A. Failure to Obtain Medical Opinions from Plaintiff's Treating Sources

An ALJ has "regulatory obligations to develop a complete medical record before making a disability determination."  *Pratts*, 94 F.3d at 37; *see* 20 C.F.R. § 416.912(b)(1).  As part of that obligation, an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians.  *Prieto*, 2021 WL 3475625, at *10–11.  To fulfill that obligation, an ALJ must make an initial request for medical opinions and, if no opinion is received, make a follow-up request between 10 and 20 days after the initial request.  *Id.* at *10; 20 C.F.R § 404.1512(b)(1)(i).  That obligation continues to exist even in cases involving claims filed after March 27, 2017, to which the "treating physician rule" no longer applies.  *See Prieto*, 2021 WL 3475625, at *8, 10–11; *see also* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844, 5875 (Jan. 18, 2017).  Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity.  *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) ("The medical records discuss

8

her illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.").

Here, the ALJ acknowledged that he did not obtain any medical opinions from any of Plaintiff's treating sources and does not indicate that he made any follow-up attempt to obtain them. (Tr. 19 ("None of the claimant's own medical sources have offered an opinion as to the nature and severity of the claimant's impairments, or how they impact his ability to perform basic work-related activities.").)  The lack of medical opinions from Plaintiff's treating sources, Drs. Chang and Bukhman (whom the ALJ failed to mention in his opinion), and the ambiguity in Plaintiff's medical history requires further development of the record.  For example, Plaintiff stated during the hearing before the ALJ that Dr. Chang had recommended surgery; however, the ALJ noted that "no such recommendation is evident from the actual treatment notes."  (Tr. 18.) Additionally, while Plaintiff stated that he uses a cane to ambulate, the ALJ noted that, "[a]part from the self-report of the claimant, the record in this case contains no such documentation" of Plaintiff requiring a hand-held assistive device.  (*Id.*)  The ALJ need not resolve every inconsistency in the record.  However, the lack of treatment notes on a recommended surgery and use of a hand-held assistive device, coupled with an absence of any treating source's opinion, reveals a critical and obvious gap in Plaintiff's medical history that requires further development. *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (remanding due to ALJ's failure to obtain "adequate information from [claimant's] treating physician"); *Wilson v. Colvin*, 107 F.Supp.3d 387, 404–08 (2d Cir. 1982) (remanding where there was an obvious gap in the record); *Oliveras ex rel. Gonzalez v. Astrue*, No. 07-CV-2841, 2008 WL 2262618, at *6–7 (S.D.N.Y. May 30, 2008) (remanding so the ALJ could make all reasonable efforts to obtain treating physician's opinion).

9

B.  **Failure to Develop Inconsistencies Between Dr. Greene's Opinion and His Examination Notes**

While there is no affirmative duty to recontact a medical source if there are inconsistencies within a medical opinion, the ALJ has a duty to develop the record if there exist "obvious gaps." *Rusin v. Berryhill*, 726 Fed. App'x 837, 840–41 (2d Cir. 2018) ("[T]he ALJ was under no obligation to recontact [plaintiff's treating psychiatrist] where there were no obvious gaps in the administrative record and the ALJ possessed [a plaintiff's] complete medical history."); *Micheli v. Astrue*, 501 Fed. App'x 26, 29–30 (2d Cir. 2012); *Rosa*, 168 F.3d at 79–80, 83–83.  While obvious gaps in the record can include missing medical evidence, as discussed above, inconsistencies or vague opinions can also create a duty to further develop the record.  *Madera v. Comm'r of Soc. Sec.*, 20-CV-1459 (PKC), 2021 WL 4480656, at *6–8, 10 (E.D.N.Y. Sept. 30, 2021) (remanding because of ALJ's determination that a consultative examiner's opinion was "vague" and unsupported); *Lee v. Saul*, No. 19-CV-9451 (CS) (JCM), 2020 WL 5362619, at *14 (S.D.N.Y. Sept. 8, 2020) (adopting report and recommendation) ("Although [the treating physician's] assessments setting forth [the plaintiff's] functioning levels were brief, and arguably vague, the appropriate solution was not to reject the opinions contained therein on that basis, but rather to recontact [the treating physician] in an effort to have him clarify any ambiguities." (record citation omitted)).

Here, the record contained only one opinion from a physician that had actually examined Plaintiff—Dr. Greene, the consultative examiner—and the ALJ found that opinion unsupported by the doctor's examination findings. (Tr. 19.)  The ALJ noted that Dr. Greene "imposed very significant physical examination findings," but concluded that those findings were not corroborated by medical evidence.  (*Id.*)  While an ALJ's duty to recontact a medical source typically arises in the context of inconsistent treating source opinions, absent any opinion from a

10

treating source or from another examining medical expert, the ALJ clearly had a duty to clarify the marked inconsistency between Dr. Greene's medical opinion and examination findings. *Madera*, 2021 WL 4480656, at *6 ("[T]he Court nonetheless finds that given the ALJ's own identification of [the consultative examiner's] opinion as 'vague,' and . . . not wholly contradicted by, or inconsistent with, Plaintiff's medical records, the ALJ should have sought clarification from [the consultative examiner] before rendering his decision as to Plaintiff's RFC."); *Merriman*, 2015 WL 5472934, at *18 ("I conclude that the ALJ's rejection of [the one-time examiner's] opinion, at least in part, without first attempting to clarify gaps in the record constituted legal error and grounds for remand."); *Jackson v. Berryhill*, 18-CV-04569 (ALC), 2019 WL 4593648, at *8 (S.D.N.Y. Sept. 23, 2019) (remanding for failing to seek clarification on a vague consultative examiner opinion.)

II.     **The ALJ's RFC Finding Is Not Supported by Substantial Evidence**

While a failure to develop the record is sufficient to remand, the Court further finds that the ALJ's RFC finding is not supported by substantial evidence. An ALJ's RFC determination must be supported by substantial evidence. *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)). Medical records alone cannot provide substantial evidence for an RFC determination; an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021). In determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings. 20 C.F.R. § 404.1520(a)(3). Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." *Selian*, 708 F.3d at 417. However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118. In any case, if there is substantial evidence in the record to support the Commissioner's findings as to any fact, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76.

Here, the ALJ considered the medical opinions of Dr. Greene, the one-time consultative examiner, and Dr. Chen, the non-examining expert. (Tr. 19.) Dr. Greene's opinion—finding that Plaintiff had marked limitations (Tr. 256)—was considered less persuasive than Dr. Chen's opinion, which was that Plaintiff could perform light work. (Tr. 19.) Therefore, the ALJ's determination that Plaintiff can perform light work was exclusively based on the opinion of a medical expert who had not examined Plaintiff. (Tr. 19–20.) This is an error for at least two reasons. First, Dr. Chen's opinion cannot constitute substantial evidence because Dr. Chen did not have access to Plaintiff's recent medical records (*see supra* note 3) and never personally examined Plaintiff. *Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1360 (ER) (DF), 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021) ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."), *report and recommendation adopted*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021); *Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831 (RJD), 2012 WL 3637450, at *3 (E.D.N.Y. Aug. 22, 2012) (remanding after court determined a non-examining physician's opinion was not substantial evidence given that the physician had access to limited treatment records); *see also Ferraro v. Saul*, 806 Fed. App'x 13, 16 (2d Cir. 2020) (remanding where the psychiatric consultative examiner's opinion was supported by the non-examining expert's opinion, which, in circular fashion, was based on the psychiatric consultative examiner's notes).

The second reason that Dr. Chen's opinion cannot provide substantial evidence to support the ALJ's RFC is because the record indicates that Dr. Chen's opinion did not account for deterioration in Plaintiff's condition, and was thus stale. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *see also Jones*, 2012 WL 3637450, at *3. Dr. Greene's consultative examination notes, the basis of Dr. Chen's opinion, reveal that, at the time of Dr. Greene's evaluation, Plaintiff was not using a cane and had not discussed surgery with Dr. Chang, his treating physiatrist. (Tr. 253–54.) However, during the hearing, slightly over a year later, Plaintiff stated that he uses a cane and that Dr. Chang had discussed surgery with him. (Tr. 56–57.) While further development of the record might not show any deterioration in Plaintiff's condition over this period, it was impermissible for the ALJ to credit or rely on Dr. Chen's opinion as current or relevant when this ambiguity existed. *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("Instead of developing the record, the ALJ reached his RFC conclusion based, in part, on the absence of this information in the record[;] . . . the ALJ was not permitted to construe the silence in the record . . . as indicating support for his determination as to [P]laintiff's limitations.").

In addition to medical opinions, the ALJ heavily relied on treatment notes from Plaintiff's appointment with Dr. Chang on May 21, 2019, where Plaintiff noted that he went on a fishing trip and was capable of walking a mile. (Tr. 16, 445–50.) However, this reliance is unwarranted for several reasons. First, while evidence of daily functioning can be used to inform an RFC, the RFC must be supported by a medical opinion. *Pearson*, 2021 WL 3373132, at *4. Second, the treatment notes themselves state that Plaintiff believed increased feelings of pain were attributable to his activity on the fishing trip. (Tr. 445.) Third, Plaintiff's ability to walk a mile does not speak to the numerous activities that light work entails, such as lifting, carrying, and

13

walking/standing/sitting for prolonged periods of time. 20 C.F.R. § 416.967(b). Finally, despite ample evidence in the record that suggests that Plaintiff is limited in his abilities to lift (*See, e.g.*, Tr. 59, 256), carry (Tr. 59, 256), and sit for prolonged periods of time (Tr. 59, 256, 445), the ALJ relied on a single data point, thereby impermissibly "cherry-picking" medical evidence that supported his conclusion. *Jones v. Saul*, No. 19-CV-5542 (BM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020) (remanding in part because an "ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not."), *report and recommendation adopted*, 2020 WL 5775195 (Sept. 28, 2020).

In sum, because the examining expert opinion does not support the RFC, a non-examining expert opinion cannot be considered substantial evidence for the ALJ's RFC, and because cherry-picked evidence cannot constitute substantial evidence, there was no substantial evidence to support the ALJ's RFC determination. *Pearson*, 2021 WL 3373132, at *4 ("[A]n ALJ's RFC determination must be supported by a medical opinion in the record at that time."); *Avila*, 2021 WL 3774317, at *20 ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."); *Jones*, 2020 WL 5775525, *12 (cherry-picked evidence cannot constitute substantial evidence).

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 1, 2022
      Brooklyn, New York